```
IN THE UNITED STATES DISTRICT COURT
  FOR THE WESTERN DISTRICT OF TENNESSEE
            WESTERN DIVISION
```
_____

| | |
|---|---|
| **LATRESE CLEAVES,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    No. 20-2819-TLP-tmp |
| | ) |
| **STATE OF TENNESSEE, DEPARTMENT** | ) |
| **OF CHILDREN SERVICES, CHILD** | ) |
| **PROTECTIVE SERVICES, JENNIFER** | ) |
| **NICHOLS, and ALISA COLLINS,** | ) |
| | ) |
|     **Defendants.** | ) |

_____

### REPORT AND RECOMMENDATION
_____

On November 9, 2020, plaintiff Latrese Cleaves, a resident of Memphis, Tennessee, filed a *pro se* complaint and a motion to proceed *in forma pauperis*.[1] (ECF Nos. 1 & 2.) On December 1, 2020, the undersigned entered an order directing Cleaves to file a properly completed *in forma pauperis* affidavit or pay the civil filing fee. (ECF No. 7.) Cleaves filed an amended complaint and updated *in forma pauperis* application on December 2, 2020. (ECF Nos. 8 & 9.) The undersigned subsequently granted Cleaves leave to proceed *in forma pauperis*. (ECF No. 11.) Accordingly, the court must screen the complaint pursuant to 28 U.S.C. § 1915. For the

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

reasons stated below, it is recommended that the complaint be dismissed.

## I. PROPOSED FINDINGS OF FACT

On November 9, 2020, Cleaves filed a *pro se* complaint against the State of Tennessee, Department of Children Services ("DCS"), Child Protective Services ("CPS"), Jennifer Nichols, the Commissioner of DCS/CPS, and Alisa Collins, a DCS case worker. (ECF No. 1.) On December 2, 2020, Cleaves filed an amended complaint against these defendants, asserting § 1983 claims for alleged violations of her Fifth, Eighth, and Fourteenth Amendment rights. (ECF No. 8.) Plaintiff also seeks to assert state law claims under Tenn. Code Ann. § 39-16-402. (Id. at 1.)

The following facts are taken from Cleaves's amended complaint.[2] DCS, Tennessee's public child welfare agency, establishes statewide standards for child welfare. (ECF No. 8, at 2.) DCS has a duty to administer the state's foster care system

---

[2]In the Sixth Circuit, an amended complaint supersedes the original and serves as the "legally operative complaint" in the matter. See Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 306 (6th Cir. 2000). For *pro se* plaintiffs proceeding *in forma pauperis*, the screening process applies equally to original and amended complaints. See Matthews v. City of Memphis, No. 2:14-cv-02094, 2014 WL 3049906, at *1 (W.D. Tenn. July 3, 2014) (granting a Rule 15 motion to amend in an *in forma pauperis* action and dismissing the amended complaint pursuant to § 1915); see also Smith v. Washington, No. 2:18-cv-10736, 2018 WL 4030809, at *2 (E.D. Mich. Aug. 23, 2018) ("Section § 1915(e)(2) is applicable throughout the entire litigation process.") (quoting In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997)).

and to investigate allegations of child abuse and neglect. (Id.) DCS also has a duty to find permanency for the children and youth in foster care. (Id.) Children often come into state custody when they are not able to safely stay in their own homes and they have no relatives who can care for them. (Id.) The first goal of DCS is to work towards safely returning children home to their families. (Id.) Foster care is meant to be a temporary service to provide nurturing and supporting homes for children. (Id. at 2-3.)

DCS took Cleaves's children in its custody, specifically F.C. (age 17), M.F. (age 10), D.C. (age 11), L.K. (age 7), and K.C. (age 6). (Id. at 3.) Cleaves alleges that while in DCS custody, F.C. was verbally and physically abused by members of her foster family. (Id.) Cleaves also alleges that while in DCS custody, F.C. has become addicted to drugs and that her foster parent sold her marijuana. (Id.) According to Cleaves, DCS became aware of this information but failed to intervene. (Id.)

Cleaves alleges that while in DCS custody, D.C. has physically fought with his foster parent, attempted to join a gang, tried to obtain a handgun, and has complained of hearing voices and spoken of suicide. (Id.) According to Cleaves, DCS also became aware of this information but failed to intervene. (Id.) Cleaves alleges that M.F., L.C., and K.C. have also been verbally and physically abused by their foster parents. (Id.) Again, Cleaves asserts that

3

DCS became aware of this information but did nothing to intervene. (Id. at 4.)

According to Cleaves, she has complied with all of DCS's demands and participated in all of DCS's programs, but the department has failed to return the children to her. (Id.) Cleaves alleges that she "applied what she learned in the [DCS] programs to the rearing of her children and [DCS] responded by seeking to jail [her]." (Id.) According to Cleaves, she was "jailed in the past based [on] false allegations of [DCS] but the court dismiss[ed] the charges." (Id.)

Cleaves asserts that DCS denied over ten qualified relatives and friends of Cleaves, including the biological father of one of the minor children, to take temporary or permanent custody of the minor children. (Id.) Cleaves alleges that DCS treats black children differently than white children in its custody. (Id.) According to the complaint, Cleaves's children have behavioral issues, and DCS is attempting to blame Cleaves for those issues. (Id.) Cleaves asserts that DCS is corrupt and has intentionally inflicted emotional distress on her. (Id.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Section 1915 Screening

Pursuant to § 1915, in proceedings *in forma pauperis*, the court shall dismiss the case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which

4

relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). "To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Barnett v. Luttrell, 414 F. App'x 784, 786 (6th Cir. 2011) (internal quotation marks omitted). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). While the court must view the factual allegations in the light most favorable to the plaintiff, the court need not "accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted).

Although courts construe *pro se* complaints liberally, "[t]he basic pleading essentials are not abrogated in *pro se* cases." Matthews, 2014 WL 3049906, at *3 (citing Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989)); see also Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996) ("[T]he lenient treatment generally accorded to pro se litigants has limits."). In other words, even *pro se* complaints must satisfy the plausibility standard. See

5

Barnett, 414 F. App'x at 786. "Courts 'have no obligation to act as counsel or paralegal' to *pro se* litigants." Matthews, 2014 WL 3049906, at *3 (quoting Pliler v. Ford, 542 U.S. 225, 231 (2004)). "Courts are also not 'required to create' a *pro se* litigant's claim for him." Id. (quoting Payne v. Sec'y of Treasury, 73 F. App'x 836, 837 (6th Cir. 2003)).

**B.   Claims Against CPS, Collins, and Nichols**

In her original complaint, Cleaves asserts claims against CPS, Jennifer Nichols, the Commissioner of DCS/CPS, and Alisa Collins, a DCS case worker. (ECF No. 1.) It is unclear whether Cleaves seeks to maintain these claims because the amended complaint does not provide a list of defendants. (ECF No. 8.) In addition, none of the allegations in the amended complaint refer to CPS, Nichols, or Collins.[3] Rather, the allegations pertain only to DCS, which Cleaves refers to as "the Department." (Id. at 2.) Because the amended complaint does not provide any allegations regarding CPS, it fails to state a claim against CPS. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Fed. R. Civ. P. 8(a)(2). Accordingly, the claims against CPS (and the

---

[3]In her original complaint, Cleaves named Nichols and Collins as defendants only in their official capacities. (ECF No. 1, at 1.) These official-capacity claims "represent only another way of pleading an action against an entity of which an officer is an agent." Noffsinger v. Landers, 196 F. Supp. 3d 746, 751 (N.D. Ohio 2016) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). Thus, the official-capacity claims against Nichols and Collins are really claims against DCS and CPS.

6

claims against Nichols in her official capacity as CPS Commissioner) should be dismissed. To the extent that Cleaves seeks to assert any individual-capacity claims against Nichols and Collins, the amended complaint also fails to state a claim because it does not name Nichols and Collins as defendants in their individual capacities or provide any allegations regarding their involvement in the events underlying the complaint. See Noffsinger, 196 F. Supp. 3d at 751; see also Twombly, 550 U.S. at 555. The official-capacity claims against Nichols and Collins in relation to their positions with DCS remain as a means for Cleaves to assert her claims against DCS.

**C.    § 1983 Claims**

"To successfully plead a Section 1983 claim, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law." Conexx Staffing Servs. v. PrideStaff, No. 2:17-cv-02350, 2017 WL 9477760, at *2 (W.D. Tenn. Nov. 3, 2017) (citing Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003)). DCS cannot be held liable under § 1983 for the constitutional violations of its employees under a theory of *respondeat superior*.[4] Pethtel v. State Dep't of Children Servs., No.: 3:10-CV-469-TAV-HBG, 2020 U.S. Dist. LEXIS 217910, 2020 WL

---

[4] As noted above, Cleaves does not assert individual-capacity claims against any DCS employees.

7

6827791, at *15 (E.D. Tenn. Nov. 20, 2020) (citing Polk Cty. v. Dodson, 454 U.S. 312, 325 (1981)). DCS, in other words, "cannot be held liable simply because one of its employees has committed a constitutional violation." Andrews v. Wayne Cty., 957 F.3d 714, 721 (6th Cir. 2020) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). Rather, DCS may be held only directly liable "for unconstitutional policies, practices, or customs that were the 'moving force' behind the deprivation of plaintiffs' rights." Pethtel, 2020 WL 6827791, at *16 (citing Dodson, 454 U.S. at 325); see also Monell, 436 U.S. at 694.

The plaintiff must allege an injury "caused by [the implementation of a] custom or policy." Andrews, 957 F.3d at 721 (quoting Arrington-Bey v. City of Bedford Heights, 858 F.3d 988, 994 (6th Cir. 2017); Morgan v. Fairfield Cty., 903 F.3d 553, 565 (6th Cir. 2018)). The injury alleged must be a constitutional violation. See France v. Lucas, 836 F.3d 612, 631 (6th Cir. 2016). And the policy identified must be "so permanent and well settled as to constitute a custom or usage with the force of law." Worcester v. Stark State Coll., 806 F. App'x 460, 462 (6th Cir. 2020) (citing Doe v. Claiborne Cty., 103 F.3d 495, 507 (6th Cir. 1996)).

Cleaves alleges violations of her Fifth, Eighth, and Fourteenth Amendment rights, but does not articulate what actions constituted these violations. (ECF No. 8, at 1-5.) Even assuming

8

that the allegations in Cleaves's amended complaint plausibly establish a constitutional violation, Cleaves does not sufficiently allege any underlying DCS policy or custom. Cleaves vaguely asserts that DCS "treats black children in [its] custody adversely [compared to] white children," but the amended complaint contains no allegations regarding any specific DCS policy or custom. Accordingly, the amended complaint fails to state a § 1983 claim against DCS.

**D.   § 1985 Claims**

Cleaves asserted a civil conspiracy claim in her original complaint under § 1985. (ECF No. 1, at 1.) It is unclear whether Cleaves seeks to maintain this § 1985 claim in her amended complaint. To the extent she seeks to do so, the complaint fails to state a claim because Cleaves has not provided allegations to plausibly establish the existence of a conspiracy or that Cleaves endured any racial or class-based discrimination. See Estate of Smithers v. City of Flint, 602 F.3d 758, 765 (6th Cir. 2010) ("To sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it."); see also C.K. v. Bell County Bd. of Educ., 839 F. Supp. 2d 881 (E.D. Ky. 2012). Accordingly, it is recommended that Cleaves's § 1985 claim be dismissed.

**E.   Supplemental Jurisdiction**

9

It appears that Cleaves also seeks to bring state law claims against defendants. Because the complaint fails to state a claim against any defendant under § 1983 or § 1985, the court should decline to exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); see also Matthews v. City of Collierville, No. 13-2703-JDT-tmp, 2014 WL 69127, at *7 (W.D. Tenn. Jan. 8, 2014). Accordingly, it is recommended that all state law claims be dismissed without prejudice.

### III. RECOMMENDATION

For the above reasons, the court recommends that the complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

December 28, 2020
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS**

**MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**