IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

————————————————————————————————————————

LATRESE CLEAVES,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        No. 20-2819-TLP-tmp
                                    )
STATE OF TENNESSEE, DEPARTMENT      )
OF CHILDREN'S SERVICES, CHILD       )
PROTECTIVE SERVICES, JENNIFER       )
NICHOLS, and ALISA COLLINS,         )
                                    )
        Defendants.                 )

————————————————————————————————————————

REPORT AND RECOMMENDATION
————————————————————————————————————————

Before the court is a second amended complaint filed by *pro se* plaintiff Latrese Cleaves on March 23, 2021.[1] (ECF No. 20-1.) Because Cleaves is proceeding *in forma pauperis*, the court must screen her amended complaint pursuant to 28 U.S.C. § 1915.[2] (ECF

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation.

[2]In the Sixth Circuit, an amended complaint supersedes the original and serves as the "legally operative complaint" in the matter. See Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 306 (6th Cir. 2000). For *pro se* plaintiffs proceeding *in forma pauperis*, the screening process applies equally to original and amended complaints. See Matthews v. City of Memphis, No. 2:14-cv-02094, 2014 WL 3049906, at *1 (W.D. Tenn. July 3, 2014) (granting a Rule 15 motion to amend in an *in forma pauperis* action and dismissing the amended complaint pursuant to § 1915).

Nos. 9 & 11.) For the reasons below, it is recommended that the complaint be dismissed.

## I.    PROPOSED FINDINGS OF FACT

On March 23, 2021, Cleaves filed an amended *pro se* complaint against the State of Tennessee, Department of Children's Services ("DCS"), Child Protective Services ("CPS"), Jennifer Nichols, in her official capacity as the Commissioner of DCS/CPS, and Alisa Collins, in her official and individual capacities as a DCS case worker (collectively "defendants"). (ECF No. 20-1, at 1.) Cleaves asserts that defendants violated her rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. (Id.) Cleaves also seeks to assert a state law claim against defendant Collins under Tenn. Code Ann. § 39-16-402, a statute that criminalizes official misconduct.[3] (Id.)

Cleaves has nine minor children in the custody of the State. (Id. at 4.) According to Cleaves, some of her children suffer from mental illnesses, "such as Attention Deficit Hyperactivity

---

[3]Tenn. Code Ann. § 39-16-402 is a criminal statute and "does not provide a private right of action." Slowik v. Lambert, 3:19-CV-00501-DCLC, 2021 WL 1176075, at *14-15 (E.D. Tenn. Mar. 29, 2021) (citing Faulkner v. Mattina, No. 3:11-CV-250-KKC, 2014 WL 201463, at *8 (E.D. Tenn. Jan. 17, 2014) ("official misconduct" under Tennessee law is a criminal charge, which may only "be brought by indictment, presentment, or criminal information."); Davis v. Earls, No. W2000-00280-COA-R3-CV, 2001 WL 589138, at *3 (Tenn. Ct. App. May 30, 2001) (Tenn. Code Ann. § 39-16-402 "do[es] not create a private right of action.")). Accordingly, Cleaves's state law claims against Collins must be dismissed.

Disorder (ADHD), schizophrenia and other disorders." (Id.) Cleaves asserts that "[d]efendants have conspired together, while acting under color of law, to permanently remove her minor children from her custody[.]" (Id.)

According to Cleaves, one of her children, D.C. (age 12), reported Cleaves's live-in boyfriend, Kevin Gibson, for assaulting him with an extension cord. (Id.) Cleaves alleges that D.C. later recanted his statement. (Id.) One of Cleaves's other children, J.K. (age 14), reported her for "pull[ing] a hand gun on him." (Id.) Cleaves alleges that J.K. later recanted his statement. (Id.) According to Cleaves, the police did not find a gun in the home and there was no proof to support J.K.'s allegation. (Id.) Another of Cleaves's children, F.C. (then age 17), reported that Gibson raped her. (Id. at 5.) Cleaves asserts that F.C. later recanted her statement. (Id.) According to the complaint, each child who reported Gibson for abuse also reported Cleaves for failing to protect them from him. (Id.) However, Cleaves alleges that each child also recanted their allegations. (Id.) According to the complaint, D.C., J.K., and F.C. all suffer from mental illnesses. (Id. at 4-5.)

Cleaves alleges that even though she forced Gibson out of the home, the State removed her children from her custody. (Id. at 5.) Cleaves contends that defendants did not adhere to DCS and CPS policy, which allows qualified relatives or friends to take custody

of children removed from their parents' home. (Id.) According to
Cleaves, defendants denied over ten of her qualified relatives and
friends the opportunity to take custody of the children. (Id. at
15.) DCS initially placed Cleaves's children in the same foster
home but eventually had to separate them due to fighting. (Id. at
5.) According to the complaint, defendants refuse to allow Cleaves
to contact her children by phone and will not provide Cleaves with
any of their educational or medical records. (Id. at 8.)

Cleaves alleges that several of her children have been
"subjected to verbal and physical abuse by their foster parents
and their foster parents' children." (Id. at 7.) According to the
complaint, "DCS was notified but did nothing to stop the abuse."
(Id.) Cleaves alleges that Collins failed to provide a safe and
healthy environment for her children. (Id. at 9.) The complaint
also raises allegations as to the troubling experiences and abusive
environments some of Cleaves's children have faced while in foster
care. (Id. at 12-14.) Cleaves asserts that DCS places white
children in better foster homes than African-American children.
(Id. at 15.)

In addition, Cleaves alleges that defendants conspired
together "to terminate her parental rights and . . . put [her] in
prison." (Id. at 5.) According to Cleaves, Collins used "unfounded
and recanted allegations to pursue termination of parental rights
of all [Cleaves's] minor children and to seek criminal charges

against [her]." (Id.) Cleaves alleges that she was "wrongfully
charged with accessory after the fact of rape," since the charge
was later dismissed. (Id. at 9.) Cleaves asserts that the Shelby
County Criminal Court, "to make sure [Cleaves] will stay in jail,
. . . set a bond of $250,000."[4] (Id. at 6.) Cleaves contends that
this excessive bond violates the Eighth Amendment. (Id.) Cleaves
also alleges that the criminal court judge was biased and violated
her rights to due process. (Id.)

According to Cleaves, defendants falsely told a state court
judge that she abused drugs and refused to cooperate with DCS.
(Id. at 6-7.) Cleaves also contends that Collins falsely told a
state court judge that Cleaves violated a "no contact order." (Id.
at 16.) In addition, Cleaves asserts that defendants failed to
provide her with notice of Juvenile Court hearings, which Cleaves
asserts violates the Fifth and Fourteenth Amendments. (Id. at 6.)
At a hearing in Shelby County Juvenile Court on October 30, 2020,
the judge allegedly demonstrated bias against Cleaves by ignoring
her and not allowing her to testify. (Id. at 7-8.) According to
the complaint, defendants wrote the fathers of Cleaves's minor
children to inform them of the allegations against her, which

---

[4]It is unclear from the complaint whether Cleaves is currently
detained, as her request for relief includes that she "be released
from the unconstitutional custody of the State." (Id. at 17.)

Cleaves asserts violates her privacy rights and the privacy rights of her children. (Id. at 8.)

In her request for relief, Cleaves asks that the court enjoin defendants "from continuing their rampage of injustices" and order defendants "to take action" on her complaints and those of her children. (Id. at 17.) Cleaves also asks that the court oversee "any action taken against [her] by Defendants" and that "a stay be issued against the Defendants pending the resolution of the case." (Id.) Lastly, Cleaves requests that she "be released from the unconstitutional custody of the State." (Id.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Section 1915 Screening

Pursuant to § 1915, in proceedings *in forma pauperis*, the court shall dismiss the case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). "To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Barnett v. Luttrell, 414 F. App'x 784, 786 (6th Cir. 2011) (internal quotation marks omitted). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ctr. for Bio-Ethical Reform, Inc. v.

Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). While the court must view the factual allegations in the light most favorable to the plaintiff, the court need not "accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted).

Although courts construe *pro se* complaints liberally, "[t]he basic pleading essentials are not abrogated in *pro se* cases." Matthews, 2014 WL 3049906, at *3 (citing Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996) ("[T]he lenient treatment generally accorded to *pro se* litigants has limits."). In other words, even *pro se* complaints must satisfy the plausibility standard. See Barnett, 414 F. App'x at 786. "Courts 'have no obligation to act as counsel or paralegal' to *pro se* litigants." Matthews, 2014 WL 3049906, at *3 (quoting Pliler v. Ford, 542 U.S. 225, 231 (2004)). "Courts are also not 'required to create' a *pro se* litigant's claim for him." Id. (quoting Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003)).

**B.    Eleventh Amendment Sovereign Immunity**

At the outset, the undersigned finds that several of Cleaves's claims are barred by the Eleventh Amendment. "[T]he Eleventh

-7-

Amendment is a true jurisdictional bar that courts can — but are
not required to — raise *sua sponte* at any stage in litigation . .
. ." Russell v. Lundergan-Grimes, 784 F.3d 1037, 1046 (6th Cir.
2015). "Eleventh Amendment immunity 'bars all suits, whether for
injunctive, declaratory or monetary relief, against the state and
its departments, by citizens of another state, foreigners or its
own citizens.'" McCormick v. Miami Univ., 693 F.3d 654, 661 (6th
Cir. 2012) (quoting Thiokol Corp. v. Dep't of Treas., 987 F.2d
376, 381 (6th Cir. 1993)). "Sovereign immunity protects states, as
well as state officials sued in their official capacity for money
damages, from suit in federal court." Boler v. Earley, 865 F.3d
391, 409-10 (6th Cir. 2017) (citing Ernst v. Rising, 427 F.3d 351,
358 (6th Cir. 2005)); see also McCrary v. Ohio Dep't of Human
Servs., No. 99-3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000)
(finding § 1983 and § 1985 claims against state agency and its
employees in their official capacities for damages barred by
Eleventh Amendment immunity). Eleventh Amendment immunity also
extends to state agencies and departments, but not to "counties
and similar municipal corporations." Boler, 865 F.3d at 410
(quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429
U.S. 274, 280 (1977)). Because DCS is an agency of the State of
Tennessee, it qualifies as "the State" for purposes of this
analysis. Gean v. Hattaway, 330 F.3d 758, 766 (6th Cir. 2003). In
addition, "[a] suit against a state official in his or her official

capacity is not a suit against the official but rather is a suit against the official's office." Russell, 784 F.3d at 1046 (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). As a result, "[i]t is a suit against the State itself." Id. (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)).

The Eleventh Amendment does not bar suit where "the state has consented to suit" or "Congress has abrogated the state's immunity." Beil v. Lake Erie Corr. Records Dep't, 282 F. App'x 363, 365 (6th Cir. 2008) (citing S & M Brands, Inc. v. Cooper, 527 F.3d 500, 507 (6th Cir. 2008)). Neither exception applies in this case. "Section 1983 does not abrogate Eleventh Amendment immunity." Boler, 865 F.3d at 410 (citing Will, 491 U.S. at 66); see also Sykes v. United States, 507 F. App'x 455, 462 (6th Cir. 2012) (finding Eleventh Amendment immunity barred civil rights claims brought under § 1983 and § 1985). "Nor has Tennessee consented to suit under Section 1983, either 'expressly or by implication.'" Petty v. Tenn. Dep't of Children's Servs., 3:19-cv-01085, 2021 WL 396689, at *2 (M.D. Tenn. Feb. 3, 2021), report and recommendation adopted, 2021 WL 679423 (M.D. Tenn. Feb. 22, 2021) (quoting Berndt v. Tennessee, 796 F.2d 879, 881 (6th Cir. 1986); citing Tenn. Code. Ann. § 20-13-102(a)); see also Jones v. Tennessee, No. 1:09-cv-171, 2010 WL 1417876, at *5 (E.D. Tenn. Apr. 6, 2010) ("Tennessee has not consented to suit, and it has

also not waived sovereign immunity in cases involving Section 1983 and Section 1985.") (citations omitted).

Lastly, "the Supreme Court announced an exception to Eleventh Amendment sovereign immunity in Ex parte Young for claims for injunctive relief against individual state officials in their official capacities." Diaz v. Michigan Dep't of Corr., 703 F.3d 956, 964 (6th Cir. 2013) (citing Ex parte Young, 209 U.S. 123 (1908)). "In order to fall within the Ex parte Young exception, a claim must seek prospective relief to end a continuing violation of federal law." Id. (citing MacDonald v. Vill. of Northport, Mich., 164 F.3d 964, 970-72 (6th Cir. 1999)). State sovereign immunity prevents a plaintiff from seeking such prospective relief from "state instrumentalities that are considered 'the state and its departments.'" Kanuszewski v. Mich. HHS, 927 F.3d 396, 416 (6th Cir. 2019) (quoting Thiokol Corp., 987 F.2d at 381); see also Doe v. Cummins, 662 F. App'x 437, 444 (6th Cir. 2016) ("Suits for equitable relief against the State and its departments are also prohibited.") (citing McCormick, 693 F.3d at 661). Rather, "[a]n Ex parte Young action may be commenced only against a state official acting in her official capacity and may 'seek [only] prospective relief to end a continuing violation of federal law.'" Whitfield v. Tennessee, 639 F.3d 253, 257 (6th Cir. 2011) (quoting Carten v. Kent State Univ., 282 F.3d 391, 395 (6th Cir. 2002)); see also Elephant Butte Irrigation Dist. of N.M. v. Dep't of

-10-

_Interior_, 160 F.3d 602, 607 (10th Cir. 1998) ("The _Ex parte Young_
exception . . . applies only when the lawsuit involves an action
against state officials, not against the state.").

Cleaves's claims against the State of Tennessee and DCS are
barred by the Eleventh Amendment and must be dismissed without
prejudice for lack of jurisdiction.[5] See _Hoffman v. Tenn. Dep't of
Children Servs._, No. 3:20-cv-00900, 2020 WL 6946606, at *2 (M.D.
Tenn. Nov. 24, 2020) (finding at the § 1915 screening stage that
Eleventh Amendment sovereign immunity barred the plaintiffs'
claims for monetary damages and injunctive relief against the State
of Tennessee and DCS); see also _Carmichael v. City of Cleveland_,
571 F. App'x 426, 435 (6th Cir. 2014) ("Dismissals for lack of
jurisdiction based on Eleventh Amendment immunity should be made
without prejudice.") (citing _Ernst v. Rising_, 427 F.3d 351, 367
(6th Cir. 2005)).

To determine whether the _Ex parte Young_ exception applies to
Cleaves's claims against Nichols and Collins as state officials in
their official capacities, the court asks "whether the complaint

---

[5]It appears that DCS and CPS, although named as separate defendants
in the complaint, actually refer to the same agency. For example,
Cleaves asserts that Nichols is commissioner of both DCS and CPS,
and the complaint provides only an address for serving process
upon DCS. To the extent that DCS and CPS may be separate agencies,
the complaint does not provide sufficient factual allegations
specific to CPS to provide notice of any claim against it, and
these claims against CPS should be dismissed on this additional
ground. See _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 555 (2007);
see also Fed. R. Civ. P. 8(a)(2).

alleges an ongoing violation of federal law and seeks relief
properly characterized as prospective." Diaz, 703 F.3d at 965
(quoting Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md., 535
U.S. 635, 645 (2002)). In order for the Ex parte Young exception
to apply, "the state official sued 'must have, by virtue of the
office, some connection with the alleged unconstitutional act or
conduct of which the plaintiff complains.'" Top Flight Entm't,
Ltd. v. Schuette, 729 F.3d 623, 634 (6th Cir. 2013) (quoting Floyd
v. Cty. of Kent, 454 F. App'x 493, 499 (6th Cir. 2012)). In other
words, "[a] plaintiff must allege facts showing how a state
official is connected to, or has responsibility for, the alleged
constitutional violations." Id. (citing Floyd, 454 F. App'x at
499). Additionally, the Ex parte Young exception does not apply
where "it is not clear what injunctive relief is sought." See
Boler, 865 F.3d at 412.

      Cleaves asks the court to enjoin defendants "from continuing
their rampage of injustices." (ECF No. 20-1, at 17.) Cleaves also
requests that the court order defendants "to take action" on her
complaints and those of her children. (Id.) Even assuming,
arguendo, that Cleaves has sufficiently alleged an ongoing
violation of federal law, these requests for relief are too vague
to trigger the Ex parte Young exception. Cleaves asks the court to
enjoin defendants but "provide[s] no indication as to what this
injunctive relief might be." See Boler, 865 F.3d at 412. Similarly,

-12-

while Cleaves asks the court to order defendants "to take action,"
the complaint does not state what action she wants them to take.
Because the complaint is unclear as to what injunctive relief
Cleaves is seeking,[6] the Ex parte Young exception does not apply
to Cleaves's claims against Nichols and Collins in their official
capacities. See id. Accordingly, these claims must also be
dismissed without prejudice for lack of jurisdiction. See
Carmichael, 571 F. App'x at 435.

## C.    § 1983 Claim

The Eleventh Amendment does not bar Cleaves's § 1983 claim
against Collins in her individual capacity, see Kanuszewski, 927
F.3d at 413, and therefore the undersigned will next determine
whether that claim survives § 1915 screening. To successfully plead
a § 1983 claim, "a plaintiff must allege the violation of a right
secured by the Constitution and laws of the United States, and
must show that the alleged deprivation was committed by a person
acting under color of state law." Nouri v. Cty. of Oakland, 615 F.

---

[6]Cleaves's remaining requests for relief include that the court
oversee "any action taken against [her] by Defendants" and that
"Plaintiff be released from the unconstitutional custody of the
State." (ECF No. 20-1, at 17.) Neither of these requests satisfy
the requirement that Cleaves "seek prospective relief to end a
continuing violation of federal law" specifically in relation to
Nichols and Collins. See Diaz, 703 F.3d at 964; see also Top Flight
Entm't, 729 F.3d at 634. The broad request for judicial review of
future conduct does not correspond to any continuing violation of
federal law, and Cleaves's request to be released from state
custody does not relate to Nichols or Collins.

-13-

App'x 291, 295 (6th Cir. 2015) (quoting <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)).

The court reads the complaint to allege that DCS violated Cleaves's Fourteenth Amendment due process rights by taking her children and terminating her parental rights based on false information.[7] "It is clearly established that the Constitution recognizes both a protectable procedural due process interest in parenting a child and a substantive fundamental right to raise one's child." <u>Bartell v. Lohiser</u>, 215 F.3d 550, 557 (6th Cir. 2000) (internal citations omitted); <u>see</u> <u>Santosky v. Kramer</u>, 455 U.S. 745, 753 (1982) (noting that "state intervention to terminate the relationship between [a parent] and [the] child must be accomplished by procedures meeting the requisite of the Due Process Clause" and describing "the fundamental liberty interest of natural parents in the care, custody, and management of their child") (alterations in original); <u>Stanley v. Illinois</u>, 405 U.S. 645, 651 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment."). Because a parent's right to the care, custody, and control of his or her child is a fundamental right, a state must

---

[7]Cleaves also alleges that a Shelby County Criminal Court judge violated her Eighth Amendment rights by imposing a bond of $250,000. However, because no factual allegations in the complaint connect this conduct to any named defendant, Cleaves fails to state a claim under the Eighth Amendment. <u>Barnett</u>, 414 F. App'x at 786.

have a compelling interest in order to interfere with it. See
Bartell, 215 F.3d at 557-58; see also Santoksy, 455 U.S. at 753-
54.

Cleaves asserts an individual-capacity claim under § 1983
against Collins, the DCS social worker assigned to her children.
"Social workers, like prosecutors and probation officers, enjoy
absolute immunity when they engage in conduct 'intimately
associated with the judicial process.'" Turner v. Lowen, 823 F.
App'x 311, 317 (6th Cir. 2020) (quoting Pittman v. Cuyahoga Cty.
Dep't of Children & Family Servs., 640 F.3d 716, 725 (6th Cir.
2011)). As a result, "social workers enjoy absolute immunity when
acting in their capacities as legal advocates." Barber v. Miller,
809 F.3d 840, 844 (6th Cir. 2015) (citing Pittman, 640 F.3d at
724-25). "A social worker acts as a legal advocate when initiating
court proceedings, filing child-abuse complaints, and testifying
under oath." Id. (citing Pittman, 640 F.3d at 724-25). "And this
absolute immunity holds, even under allegations that the social
worker intentionally misrepresented facts to the family court."
Id. (citing Pittman, 640 F.3d at 723-25); see also Turner, 823 F.
App'x at 317 ("A social worker . . . is absolutely immune not only
from negligent misrepresentations to the court, but also knowing
and intentional misrepresentations.") (internal citations
omitted). Absolute immunity applies "whether the misrepresentation
is included as part of a petition for removal, sworn statement, or

-15-

both." Turner, 823 F. App'x at 317 (citing Brent v. Wayne Cty. Dep't of Human Servs., 901 F.3d 656, 684-85 (6th Cir. 2018)).

While the absolute immunity afforded to social workers does not extend to "investigative and administrative acts," the Sixth Circuit Court of Appeals has interpreted this exception "quite narrowly in practice." Id. "A plaintiff, for instance, cannot sue a social worker for her alleged failure to 'properly investigate' the facts supporting a petition for removal, even if those facts turn out to be false or incomplete." Id. (citing Pittman, 640 F.3d at 726). Similarly, "a social worker is immune from claims that she could have facilitated the return of a removed child 'had [she] performed an adequate investigation at any time' between issuance of an initial removal order and the ultimate juvenile dependency hearing." Id. (quoting Rippy v. Hattaway, 270 F.3d 416, 422 (6th Cir. 2001)).

Here, Cleaves alleges that Collins made false statements in connection with state court proceedings. These statements fall under the protection of social workers' absolute immunity. See Barber, 809 F.3d at 844. Similarly, Collins is entitled to absolute immunity for filing child abuse complaints against Cleaves. See id. As explained above, any such claims against Collins based on acts performed "in her capacity as a legal advocate" must be dismissed. Id. (quoting Pittman, 640 F.3d at 723-25).

While Cleaves attributes other conduct to Collins, a majority of the allegations in the complaint refer to defendants only as a collective group, making it unclear which allegations Cleaves intends to attribute to Collins. The allegations referring to defendants collectively fail to provide Collins with notice of any claim specific to her. See Twombly, 550 U.S. at 555; see also Heyerman v. Cty. of Calhoun, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."). In addition, many of the allegations in the complaint are conclusory or constitute "a formulaic recitation of the elements of a cause of action." See Twombly, 550 U.S. at 555; see also Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007).

The remainder of the allegations against Collins pertain to the foster homes in which she placed Cleaves's children. For example, Cleaves asserts that Collins failed to provide a safe environment for her children by placing them in abusive foster homes. Through these allegations, Cleaves seemingly attempts to assert § 1983 claims on behalf of her minor children as the real parties in interest.[8] However, while Cleaves may proceed *pro se* as

---

[8]Pursuant to Federal Rule of Procedure 17(b)(1), "capacity to sue or be sued is determined . . . for an individual who is not acting in a representative capacity, by the law of the individual's domicile . . . ." Fed. R. Civ. P. 17(b)(1). In Tennessee, "[m]inors

to her own claims pursuant to 28 U.S.C. § 1654, she may not pursue
*pro se* any claims that belong to her children. See <u>Hoffman</u>, 2020
WL 6946606, at *2. "Although 28 U.S.C. § 1654 provides that 'in
all courts of the United States the parties may plead and conduct
their own cases personally or by counsel,' that statute does not
permit plaintiffs to appear *pro se* where interests other than their
own are at stake." <u>Shepherd v. Wellman</u>, 313 F.3d 963, 970 (6th.
Cir. 2002); <u>see also</u> <u>Zanecki v. Health All. Plan of Detroit</u>, 576
F. App'x 594, 595 (6th Cir. 2014) (per curiam) ("Because, by
definition, *pro se* means to appear on one's own behalf, a person
may not appear *pro se* on another person's behalf in the other's
cause of action.") (internal citation and quotation marks
omitted). "The rule against non-lawyer representation 'protects
the rights of those before the court' by preventing an ill-equipped
layperson from squandering the rights of the party he purports to
represent." <u>Zanecki</u>, 576 F. App'x at 595 (quoting <u>Myers v. Loudoun
Cty. Pub. Sch.</u>, 418 F.3d 395, 400 (4th Cir. 2005)); <u>see also</u> <u>Bass
v. Leatherwood</u>, 788 F.3d 228, 230 (6th Cir. 2015); <u>Hoffman</u>, 2020
WL 6946606, at *2. To the extent Cleaves seeks to assert § 1983
claims for which her minor children are the real parties in

---

cannot maintain lawsuits in their own names." <u>Vandergriff v.
ParkRidge E. Hosp.</u>, 482 S.W.3d 545, 552 (Tenn. Ct. App. 2015)
(citing <u>Busby v. Massey</u>, 686 S.W.2d 60, 62 (Tenn. 1984)); <u>see also</u>
Tenn. R. Civ. P. 17.03.

interest, as opposed to her own personal claims, any such claims must be dismissed without prejudice.

**D.    § 1985 Claim**

Cleaves additionally seeks to assert a civil conspiracy claim under § 1985. To establish a civil conspiracy under § 1985(3), "the claimant must show that (1) 'two or more persons . . . conspire[d]' (2) 'for the purpose of depriving . . . [the claimant] of the equal protection of the laws' due to racial or class-based animus and that the conspirators (3) committed an act 'in furtherance of the object of such conspiracy' (4) that 'injured' the claimant." Maxwell v. Dodd, 662 F.3d 418, 422 (6th Cir. 2011) (quoting 42 U.S.C. § 1985(3)). A claimant under § 1985(3) must allege "both membership in a protected class and discrimination on account of it." Estate of Smithers v. City of Flint, 602 F.3d 758, 765 (6th Cir. 2010) (citing Bartell v. Lohiser, 215 F.3d 550, 559 (6th Cir. 2000)); see also Vakilian v. Shaw, 335 F.3d 509, 518-19 (6th Cir. 2003).

Even if not barred under the immunity analysis in the previous sections of this Report, Cleaves's § 1985 claim fails for a number of other reasons. Cleaves alleges that defendants conspired to terminate her parental rights, but the complaint lacks factual allegations to support a conspiracy claim. See Eidson, 510 F.3d at 634 ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."). In addition, Cleaves does

-19-

not allege that the purported conspiracy to terminate her parental rights was due to racial or class-based animus. See C.K. v. Bell Cty. Bd. of Educ., 839 F. Supp. 2d 881, 885 (E.D. Ky. 2012). Instead, Cleaves asserts that defendants "have a personal vendetta against [her]." (ECF No. 20-1, at 14.) Because Cleaves has not provided sufficient factual allegations to plausibly establish the existence of a conspiracy or that she endured any racial or class-based discrimination, it is recommended that her § 1985 claim be dismissed.[9]

### III. RECOMMENDATION

For the above reasons, it is recommended that the second amended complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

Respectfully submitted,

s/ Tu M. Pham
_____
TU M. PHAM
Chief United States Magistrate Judge

June 10, 2021
_____
Date

---

[9]Because Cleaves has no claim under § 1985, she has no claim under § 1986. See Radvansky v. City of Olmsted Falls, 395 F.3d 291, 315 (6th Cir. 2005) ("[W]here plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986.") (internal quotation marks omitted). In addition, Cleaves seeks to assert a claim under § 1988, the statute providing attorney's fees and costs to a "prevailing party" in a civil rights case. "There is, however, no individual claim pursuant to § 1988." Jackson v. Town of Caryville, Tenn., No. 3:10-cv-153, 2011 WL 5143057, at *7 (E.D. Tenn. Oct. 28, 2011). Accordingly, Cleaves's claims under § 1986 and § 1988 must also be dismissed.

NOTICE

WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS
REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE
SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND
RECOMMENDATIONS.   ANY PARTY MAY RESPOND TO ANOTHER PARTY'S
OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A
COPY.   28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R.
72.1(g)(2).   FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS
MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER
APPEAL.